DOWNEY, Chief Judge,
dissenting:
Appellees, Adler and Carlin, sued appellants and others (not parties to this appeal) to recover a real estate brokerage commission arising out of a contract to sell realty in Broward County.
On July 6, 1978, appellants entered into a written contract to sell a parcel of property in Broward County to Edward Leeds for $1,575,000, the closing thereof to take place not later than December 1, 1973. Appel-lees, Adler and Carlin, had brought the purchaser and seller together and they were parties to the July 6, 1973, contract which, among other things, provided that the brokers were to be paid a commission of $157,-000. With regard to the broker’s commission, the contract also provided:
“No other party is entitled to a commission on this Contract, and these parties shall not be entitled to any commission or other funds unless and until said sale closes and final payment is disbursed to Seller.”
The contract was not closed on December 1, 1973, and the parties negotiated a new contract which essentially required appellants to sell to Leeds on January 31, 1974, unless by December 10,1973, appellants had procured another buyer. Appellants agreed that, if they found another buyer by December 10, 1973, both appellants and Leeds would fully release the other from the terms of the July 6, 1973, contract, and appellants would pay to Leeds $232,000, which sum represented payments made by Leeds on the July 6th contract, plus the value of plans, surveys and permits for development of the property.
Appellants were successful in acquiring a new purchaser by December 10, 1973, and thus Leeds never closed the purchase of the property under the December 1, 1973, contract. Nonetheless, appellees demanded their commission arising out of the July 6, *301 1973, contract, but appellants refused to pay any commission and this litigation ensued. After a trial by the court without a jury, final judgment was entered for appel-lees for the entire amount of their commission.
It appears to me that this case should turn upon the factual determination of whether appellees produced a purchaser who was ready, willing and able to close on December 1, 1973. The contract provided that appellees would be paid their commission only upon a closing taking place. This, of course, does not mean that the appellants could prevent a closing by their conduct and thus defeat the appellees’ claim for a commission; however, absent some conduct on the appellants’ part preventing a closing, the appellees would not be entitled to their commission until their purchaser closed pursuant to the terms of the contract.
Appellants’ first point on appeal is directed to the trial court’s error in admitting hearsay testimony relative to a commitment which Leeds was supposed to have obtained to finance the purchase. This testimony by Appellee-Adler was clearly inadmissible because it was hearsay. Even if admissible, based on Adler’s entire testimony on that point, it had no probative value for two reasons. First, Adler ends up testifying that the so-called commitment was really a letter of intent and secondly, Leeds did not accept it because Leeds thought the interest rate too high.
The evidence further shows that on December 1, 1973, there was a meeting in the office of appellants’ counsel for the purpose of appellants’ formally offering to close. Leeds’ lawyer was present and, though appellants demanded that Leeds close, he did not do so. His lawyer had no funds with which to close. At that point it seems to me the purchaser was in default and the appellants were free to commence negotiations with a new purchaser. The record reflects that the appellants were anxious to sell the property and so, after Leeds refused to close on December 1, 1973, the parties spent the rest of the day negotiating a new contract with Leeds which was signed that same day. Under the new contract Leeds was still to have the option to purchase unless appellants found a new purchaser by December 10, 1973, which they did. Had the property been sold to Leeds pursuant to the December 1, 1973, contract then appel-lees might well have been in a position to claim they were still entitled to a commission. My review of the record reveals that appellees did not prove that their purchaser, Leeds, was ready, willing and able to close on December 1, 1973, or that appellants, by their conduct, precluded the closing and thus appellees were not entitled to recover a commission.
Appellees contend that Leeds’ ability or willingness to close was irrelevant because in Paragraph 4 of the December 1, 1973, contract both appellants and Leeds agreed to waive any prior defaults by Leeds. But the record shows appellants were willing to release Leeds for any default under the July 6, 1973, contract and, in addition, were willing to pay him $232,000 in order to keep their title clear and try and sell it to someone else by December 10, 1973. Of course, if they were able to find a new buyer, they wanted mutual releases so as not to have any possible litigation over the old contract which could foul the new contract. The releases agreed upon in the contract of December 1, 1973, did not have the effect of interfering with any right appellees had under the July 6, 1973, contract, but rather, if anything, gave them a possible chance of resurrecting their commission rights.
Without belaboring the point further, it seems to me that appellees did not prove they were entitled to the commission awarded them by the final judgment, so I would reverse.